We are back on the record. Judge Rovner is present. We are going to begin now with, I'm sorry to say Judge Rovner is on the phone, video phone, and we're going to begin now with case number 3, Seaway Bank v. J&A Series, et al. These are appeals 19-2268 and 19-2425. We'll begin with Mr. Raimondi. May it please the court. Good morning, Your Honor. I want to start off by citing to a case, Bushel v. Bushel, 576F3-451, 7th Circuit, 2009, a case cited by the FDIC in page 18 of the response brief. And I quote, this court is bound to evaluate its own jurisdiction as well as the jurisdiction of the court below, sua sponte if necessary, end quote. To that end, I cite to this court in Taylor v. Fannie Mae, 374F3-529, 7th Circuit, outlined the Roker-Feldman Doctrine, which precludes lower court jurisdiction over matters seeking review of state court judgments. In applying the Roker-Feldman Doctrine, matters that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry. I submit that the orders from the lower federal court are void under the Roker-Feldman Doctrine because the petition to quash filed by appellants in the state court pursuant to Illinois Code of Civil Procedure 735 ILCS 5 forward slash 2 dash 1401 and removed by the FDIC to the lower federal court sought just that. A review of a final state court judgment. In light of the Roker-Feldman Doctrine, appellants asked this court to reverse the orders entered by the lower federal court and to remand the matter to the state court for further proceedings. Turning to the sole issue presented in the briefing before this court for review. As a matter of section 214.01 petition, challenging the validity of a judgment as void constitutes a claim under the Financial Institutions Reform, Recovery, and Enforcement Act. And I'll refer to it as the act. And therefore required petitioners to exhaust the administrative process. The case law is well settled that in Illinois, a 214.01 petition asserting a challenge to the judgment, the validity of a judgment, is akin to a motion to quash, which seeks to protect one's due process rights. Now, turning to the relevant sections of the act. And I quote, no court shall have jurisdiction over any claims or action for payment from or any action seeking a determination of rights with respect to the assets of any depository institution for which the corporation has been appointed receiver. Including assets of the corporation, which it may require as receiver. Or second, any claim relating to any act or admission of such institution or the corporation as the receiver. And now, while the act does not define what a claim is, the case law interpreting the act makes abundantly clear that defendant's petition to quash, which was filed pursuant to Illinois law, is not a claim. And I cite to Marquis v. FDIC, 965F2nd, 1148, 1st Circuit, 1992, which is cited in the case Freeman v. FDIC, 56F3rd, 1394, DC Circuit, 1995, which is cited in the FDIC's response brief at page 5, footnote 11. The court held that the act's jurisdictional bar applies to three distinct claims or actions. The first of which are all claims seeking payment from the assets of the affected institution. Second, all suits seeking satisfaction from those assets. And last, all actions for the determination of rights vis-a-vis those assets. Claims is also defined in Boever Law Dictionary as a demand for satisfaction for a loss or claim. Here, the petitioners are not seeking any form of relief from the FDIC. Specifically, the petitioners are not making a claim against the FDIC for payment from or any action seeking a determination of rights with respect to the assets of Seaway Bank, for which the FDIC… I'm going to interrupt you for one moment, please, Mr. Raimondi. Yes, Your Honor. And help me with this. In subsection I, lowercase I, of section 1821 D13, capital D, it appears that jurisdiction is stripped not only from claims seeking payment, but also claims, quote, on a determination of rights to the assets, end quote, of failed banks. Why is this claim not covered by the determination of rights part of subsection I? For the simple reason that the case law that interprets subsection I and even subsection II has nothing to do with the validity of a judgment. They all have to do with a declaration action or a monetary claim, and that's the distinction that we have to be careful to draw here. This is not a claim on a note or saying we don't owe $740,000 or we're claiming $6 million in trust, for example, like the Miller v. FDIC case or the Mayhear v. FDIC case. This is saying that a judgment is void, and it's further important to delineate even subsection II, which says the acts or omissions of such institution or corporation that acts as a receiver. Because, again, we're concerned with the order itself. We're not concerned with the acts of the bank or the receiver. We're concerned with the entry of an order that was entered by the lower court. But aren't you really? Go ahead, Judge Roper. Thank you. How can we characterize the result here as an injustice when GNA theories could have complied with the administrative process and then appealed if they found fault with the outcome? Because the administrative process cannot result in the vacatur of an order. It's that simple. The administrative process can say, well, okay, we're going to make a determination with regard to this bank account, this mortgage, this loan, this note. It can never vacate a void order. That is within the sole power of the judiciary to do. And, in fact, in Illinois law, it's only by the filing of a petition pursuant to Section 1401. You're into your rebuttal time. Do you want to? I'm sorry. Quick question. Yes, Your Honor. You are seeking to have the order of foreclosure vacated, but aren't you also seeking to be made whole if you get that order vacated? So the important notion in the case law interpreting 1401 in Illinois is it doesn't contemplate what might happen later on down the road. The sole purpose of a 1401 is essentially to determine is a judgment valid or not. That is the limit of the scope. And in People v. Vincent, the Illinois Supreme Court noted that there are only five possible outcomes, to strike the 1401 petition, to grant or deny the 1401 petition on the pleadings, or to grant or deny the petition after an evidentiary hearing to determine disputed facts. I mean, if the order of forfeiture is vacated, aren't you going to ask the court then to be made whole? The property's been sold, so you're not going to get the property back in all likelihood. So the interesting part is that goes into the unrightness of trying to assert a claim or go through the administrative claims process because we don't know what the court was going to do. If the court granted, for example, let's say the court denied the 1401 and found that the judgment is valid, why would one have to go through the administrative claims process? It would confound logic. Would you like to reserve the remainder of your time? Yes, Your Honor. Thank you, Mr. Raimondi. We will now hear from Mr. Gorisko. Good morning, and may it please the Court. My name is John Gorisko, and I represent the FDIC as receiver for Seaway Bank and Trust Company. One of the jobs that the FDIC has as receiver is to administer the mandatory claims process, which is in Section 12 U.S.C. 1821d. 12 U.S.C. 1821d, 13d states that no court shall have jurisdiction over any claim relating to any act or omission of the failed bank unless the claimant has exhausted the FIREA claims process. J&A argues that what they have filed in this case, which is a petition to vacate a judgment under Section 2-1401 of the Coolidge Civil Procedure, is not a claim. They argue that it is not a claim because they are not seeking monetary relief. Now, putting aside the notion, following up on your question, Judge St. Deve, about whether the endgame here really is restitution, after all, the briefs filed below by J&A and even in this Court make clear that their view is that under Illinois law, as night follows day, any vacated judgment leads to a mandatory requirement by a judge to order restitution. But putting that aside, as we set forth in our brief, the meaning of claim under Section 1821d, 13d is not limited to monetary relief. We know that in a couple of ways. First of all, looking at the plain language. Subsection d, 13d, has two components. Two categories of claims for which jurisdiction is stripped from all courts, which will become important in the second issue that Mr. Raimondi raised, but withdrawing jurisdiction from all courts of any claim. And in subsection i, it talks about any claim or action for payment, whereas in subsection 2i, the subsection we focus on in our brief, it talks about any claim. There is no for-payment qualifier. And the courts of appeals have recognized this difference. We cited to the Wilner case from the Fourth Circuit. We cited to the Westberg case from the D.C. Circuit. Both of those cases specifically hold that the claims process under subsection 2 covers claims for non-monetary relief because that's what the statute says. It is not limited in the second prong to claims for monetary relief. And in those cases, for example, the courts found that the FDIC could declare declaratory or enter declaratory relief in the claims process. Counsel mentions today, although it wasn't discussed below in the briefs, well, what can the administrative claims process do? There's no cases cited as to what the administrative claims process can do with a particular claim. And as the Wilner court found, for someone to intentionally bypass the FIREA claims process and then come in later and say, well, we couldn't have gotten any good relief out of it anyway, that's just sanctioning strategic pleading and bypassing the claims process. And in Wilner, the court found that any arguments about what the claims process could provide had been waived. But even if those arguments weren't waived, had this 2-1401 petition been presented to the FDIC? Again, I don't have that claimant from me. I wouldn't be making the decision. But there are a couple of things, at least I can think of, that the FDIC could have done. For example, again, as Judge Seedy mentioned, the issue of getting the property back, the foreclosed property that was sold by the bank after it foreclosed on the noted issue here. The FDIC could have allowed, for example, an unsecured claim in the amount of the value of the property. The FDIC also, with respect to the judgment that was entered, counsel talked about the fact that, well, only a court can vacate a judgment. Well, the FDIC, for example, could potentially, in certain cases, pull back that judgment from the party that it sold it to and then agree not to enforce that judgment. That's what the court talked about in Wilner and Westberg. They said the power to enforce a note is also the power to decline to enforce a note. Similarly here, the FDIC were to pull back the judgment from the third party it transferred it to. It could then agree not to enforce that judgment. So it sounds like you're agreeing that the FDIC could not agree to vacate the judicial order, but there may be other remedies that the FDIC could agree to that would get J&A to the same place. Yes, and the FDIC also could always enter into an agreed order to vacate a judgment. I mean, like any litigant, the FDIC could enter into an agreed order. But in a situation like here, if this had gone through the claims process prior to litigation being filed, which is the whole point of the FIREA claims process, it would have been a matter where other steps could have been taken. For example, another way to deal with this without getting a court order is, in Illinois, when a judgment is satisfied, the creditor files a satisfaction of judgment. The FDIC could, after reclaiming that judgment from the third party it had been transferred to, simply enter a satisfaction with the court. That would have ended the issue of the judgment. So, yes, Judge Rotman? No, in other words, well, I mean, that's sort of your response to the argument that the FDIC will never be involved in the claim unless a court first concludes that service should be quashed and that the lack of personal jurisdiction was apparent on the face of the record. Yes, with respect to the relief that is being sought in JNA's claim, if the judgment were to be, and again, every case is different, but the FDIC has entered into interagreements with third parties where they have the right to reclaim assets under certain circumstances. We don't know what the case would have been here because, again, this didn't go through the claims process, but were the FDIC to be able to pull back that judgment, then there would be no need to make any finding as to whether a lack of personal jurisdiction was present in the record because the judgment would no longer be enforced. And let me just make sure of this. JNA series could have brought this argument regarding defective service in the FDIC administrative process, and would that be a claim that could have been resolved in that process? And thirdly, would they have had a right to appeal if the FDIC had rejected the claim? Judge Roedner, under the claims process, had JNA timely filed the claim that's before this court today? Had they timely filed that in the FDIC claims process if the FDIC had looked at the claim and disallowed it, or if the FDIC had given them relief but they were unsatisfied with that relief? Under Section 1821D, JNA would have had 60 days to file a lawsuit in district court, and they would have the right for the district court to take a fresh look at that with no thumb on the scale as to the FDIC's determination. It would be a de novo look at the claim that had been filed by JNA. So there's no appellate process, but they can preserve their claim and pursue their claim in court separately? They could move to district court, and then, like any other lawsuit, if they were unsatisfied with the determination, they could then file an appeal to this court. In my brief time remaining, I would like to address this issue which I learned about today at 9.15 this morning about the issue of the Rooker-Feldman Doctrine. This is a dismissal for lack of subject matter jurisdiction. Whether there is another ground under which the district court did not have subject matter jurisdiction does not need to be reached by this court because when Congress has withdrawn subject matter jurisdiction from all courts, state or federal, for failure to satisfy and exhaust the FIREA claims process, there is no court to remand this to. This case, if this court finds that the FIREA claims process was required to be exhausted and it wasn't, no court can hear this case. So remand would be a futile act, and it would be nonsensical. I see that my time is up. If the court has any other questions. Thank you, Mr. Garrisco. We'd ask that the district court be affirmed. Thank you. Mr. Raimondi, rebuttal. I'd like to address counsel's last point. Last point first, which is the subject matter jurisdiction. According to counsel, it doesn't matter whether there was subject matter jurisdiction lacking as a result of failure to exhaust the administrative claims remedy or because of the Roker-Feldman doctrine. However, there is a distinction here. The Roker-Feldman doctrine would have resulted in the remand back to state court for further proceedings, and I believe that there should be a determination whether the judgment is valid or not. Whether the court ever had personal jurisdiction over the appellants or not. That could never be had from what counsel is saying, well, there are certain things that the FDIC could have worked towards. Working towards what the FDIC is recommending could have resulted in debt income forgiveness, for example, tax consequences. The only avenue would have been to vacate the order as void, and what counsel attempts to do is say, well, because you didn't go through the claims process, now a void judgment is now made valid. Thank you, Mr. Rimondi. Thank you, Your Honor. Thank you. The case will be taken under advisement.